# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**J. Mark Coulson**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

December 18, 2025

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *David D. v. Frank Bisignano, Social Security Administration*
       Civil No. 1:25-cv-00950-JMC

Dear Counsel:

David D. ("Plaintiff") petitioned this Court on March 24, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 7, 10). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the case to the SSA for further consideration for the reasons explained below.

## I.    Procedural Background

Plaintiff filed his Title II application for DIB and Title XVI application for SSI on July 26, 2019, alleging disability as of January 1, 2018.[1] (Tr. 49-50, 328-330, 331-332, 335-338, 381).[2] Plaintiff's claim was denied initially and upon reconsideration. *See id.* at 81-186, 187, 188-189, 190-191. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 145-156. ALJ Robert Baker Jr. conducted a telephone hearing on December 10, 2020. *See id.* at 148. ALJ Baker subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. *Id.* at 156. Thereafter, the Plaintiff requested the Appeals Council to review the decision of the Administrative Law Judge. *See id.* at 162-165. On February 11, 2022, the Appeals Council granted the Plaintiff's Request for Review, vacated the hearing decision, and remanded the Plaintiff's claims for further proceedings because the recording of the original proceeding was defective. *Id.* After a supplemental hearing on July

---

[1] Plaintiff originally alleged that he became disabled on February 2, 2017, and later amended his disability onset date to January 1, 2018. (Tr. 49-50).

[2] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 6) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

12, 2022 (Tr. 18-82), ALJ Baker again determined that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 18-29). Thereafter, the Appeals Council affirmed the ALJ's decision. *Id.* at 1-5.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability from the date of January 1, 2018. (Tr. 21). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments:

> status post bilateral total hip replacements, degenerative disc disease, degenerative joint disease of the bilateral knees, residual chronic hip pain right greater than left, and multiple joint arthritis (20 CFR 404.1520(c) and 416.920(c)).

*Id.*

The ALJ and Appeals Council also determined that Plaintiff suffered from the following non-severe impairments:

> The claimant has a history of obesity, as evidenced by his weight of 238 pounds at 6' 1" tall, which calculates to a body mass index (BMI) of 31.4. (Exhibit 35F/4). The undersigned has considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 19-2p. However, there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. August 2019 medical records documented a normal gait. (Exhibit 31F/8). At the August 29, 2022, orthopedic consultative examination, the claimant had good muscle development, he was able to rise on his heels and toes, and his coordination was intact. (Exhibit 32F/4). Therefore, the undersigned finds that the claimant's obesity

is not a severe impairment.

*Id.* At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's spine impairments, the ALJ opined:

> The severity of the claimant's physical impairments does not meet Listing 1.15 because there is no evidence of compromise of a nerve root meeting the criteria of sections A, B, C, and D. Listing 1.15 requires the following: A. Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s): 1. Pain; or 2. Paresthesia; or 3. Muscle fatigue, AND B. Radicular distribution of neurological signs present during physical examination or on a diagnostic test and evidenced by 1, 2, and either 3 or 4: 1. Muscle weakness; and 2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; and 3. Sensory changes evidenced by: a. Decreased sensation; or b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or 4. Decreased deep tendon reflexes, AND C. Findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine, AND D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: 1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. The evidence of record does not establish a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands. At the August 29, 2022, orthopedic consultative examination, there was no evidence of gross neurological deficits, the claimant did not use a brace or assistive device, and his gait was only mildly antalgic. (Exhibit 32F/4).

> The severity of the claimant's physical impairments does not meet Listing 1.16 because there is no evidence of compromise of the cauda equina meeting the criteria of sections A, B, C, and D. Listing 1.16 requires the following: A. Symptom(s) of neurological compromise manifested as: 1. Nonradicular distribution of pain in one or both lower extremities; or 2. Nonradicular distribution of sensory loss in one or both lower extremities; or 3. Neurogenic claudication, AND B. Nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by 1 and either 2 or 3: 1. Muscle weakness. 2. Sensory changes

evidenced by: a. Decreased sensation; or b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or c. Areflexia, trophic ulceration, or bladder or bowel incontinence. 3. Decreased deep tendon reflexes in one or both lower extremities, AND C. Findings on imaging or in an operative report consistent with compromise of the cauda equina with lumbar spinal stenosis, AND D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: 1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand. As noted above, the objective evidence does not establish a documented medical need for any of the assistive devices considered in this listing. August 2020 medical records noted an antalgic gait, but there was no indication that the claimant needed an assistive device to ambulate. (Exhibit 30F/27).

*Id.* at 22-23. Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to lifting 20 pounds occasionally and 10 pounds frequently, and he is limited to carrying 20 pounds occasionally and 10 pounds frequently. The claimant can sit 6 hours out of an 8-hour workday, but must alternate to standing, while remaining at the workstation, for 5 minutes after 30 minutes of sitting. The claimant can stand for 4 hours out of an 8-hour workday but must alternate to sitting, while remaining at the workstation, for 5 minutes after every 30 minutes of standing. The claimant can walk for 4 hours out of an 8-hour workday but must alternate to sitting, while remaining at the workstation, for 5 minutes after every 20 minutes of walking. The claimant can push/pull as much as he can lift/carry. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to unprotected heights and moving mechanical parts.

*Id.* at 24. The ALJ further reasoned,

The claimant's allegations are not supported by the objective medical evidence. The medical records confirm the claimant's severe impairments of status post bilateral total hip replacements, degenerative disc disease, degenerative joint disease of the bilateral knees, residual chronic hip pain right greater than left, and

multiple joint arthritis; however, the records do not support the severity he alleges.

The medical evidence of record documents a history of bilateral total hip replacements and other musculoskeletal issues. (Exhibit 27F). The claimant consistently attended pain management treatment for hip pain and knee pain throughout 2017, and he continued to go to pain management therapy. (Exhibit 9F; Exhibit 10F; Exhibit 11F; Exhibit 12F; Exhibit 13F; Exhibit 14F). In January 2018, he stated that his pain was well-controlled. (Exhibit 15F/1). His physical examination showed an antalgic gait, but the claimant's sensation was grossly intact to light touch. (Exhibit 15F/5). He had a full range of motion in the lumbosacral spine, and his straight leg-raising test was negative bilaterally. (Exhibit 15F/5). The claimant denied any additional symptoms in June 2018. (Exhibit 17F/1).

In December 2018, the claimant continued to use his pain medication without side effects, and he was able to function. (Exhibit 20F/1). In January 2019, the claimant's treatment plan included weaning down his pain medication upon his request. (Exhibit 21F/1-2). April 2019 medical records showed mild pain with range of motion testing of the cervical spine, no paraspinal muscle spasms in the lumbar spine, and some crepitus in the lower extremities. (Exhibit 23F/5). However, the claimant had normal muscle strength in both lower extremities, and there was no evidence of edema or joint deformity. (Exhibit 23F/5).

…

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the claimant's admitted daily activities and abilities do not support a finding of disability. For example, recent pain management records from September 2022 show that the claimant used his pain medication as prescribed without side effects, and his medication allows him to function and have quality of life. (Exhibit 35F/2). At the August 29, 2022, orthopedic consultative examination, the claimant reported that he is able to drive, and he is functional in daily living despite not being able to participate in aggressive physical activity. (Exhibit 32F/3).

*Id.* at 24, 26. Given this RFC determination, the ALJ concluded at step four that Plaintiff is unable to perform any past relevant work, which included pharmaceutical sales and medical equipment sales. *Id.* at 27.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) a Price Marker (DOT #209.587-034), unskilled (SVP 2), light exertion, 40,000 jobs nationally; (2) a Packager Marker (DOT #222.587-038), unskilled (SVP 2), light exertion, 50,000 jobs nationally; and (3) Routing Clerk (DOT #222.687-022), unskilled (SVP 2), light exertion, 65,000 jobs nationally. *Id.* at 28-29. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2018, through the date of the ALJ's decision. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) the ALJ "erroneously evaluated the Plaintiff's subjective complaints"; and (2) "erroneously assessed the Plaintiff's residual functional capacity." (ECF No. 7 at 4, 13). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is not supported by substantial evidence. As such, I will remand the case.

### a.    The ALJ's and Appeals Council's RFC Determination is Not Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging

in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

     i.     *The ALJ and Appeals Council Improperly Considered Plaintiff's Subjective Complaints in Determining Plaintiff's RFC*

Plaintiff posits the "erroneously required the Plaintiff to prove the type and degree of his subjective complaints by objective medical evidence, and specifically determined that he had not done so, thereby improperly increasing his burden of proof." (ECF No. 7 at 7). It is true that the ALJ concluded Plaintiff's conditions including his hip replacement, degenerative disc disease, degenerative joint disease of the bilateral knees, residual chronic hip pain, and multiple joint arthritis "significantly limit the ability to perform basic work activities" and are consistent with symptoms of pain. (Tr. 21, 22). To that end, Plaintiff avers the ALJ "erroneously required the Plaintiff to prove the type and degree of his subjective complaints by objective medical evidence, and specifically determined that he had not done so, thereby improperly increasing his burden of proof." (ECF No. 7 at 7). Plaintiff continues,

     Second, the Administrative Law Judge did not adequately address the intensity and persistence of the Plaintiff's symptoms, specifically with regard to functionality and ability to do work-related activities on a regular and continuing basis, and made no mention of the intensity or persistence of the Plaintiff's complaints in assessing his residual functional capacity.

*Id.* at 8. Moreover, "while the Administrative Law Judge determined that the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence, he failed to identify either the Plaintiff's specific statements to which he was referring, or the medical evidence which was inconsistent with such statements." *Id.* at 9-10.

     The Commissioner retorts,

     the ALJ discounted Plaintiff's subjective complaints because they were inconsistent with the evidence discussed above, particularly Plaintiff's own reports that: his pain was well controlled (Tr. 561), he denied additional symptoms (Tr. 573), he was able to function with pain medication (Tr. 591), he was "doing very well" following left total hip replacement and he did not use an assistive device (Tr. 640, 639), he was "pleased" with his progress (Tr. 639), his pain had resolved and he was not using an assistive device (Tr. 660), he was "doing full activity without restrictions" and "running three times a week" (Tr. 781), he was "very pleased" with his progress (Tr. 781), that weaning down on his pain medication was "working well" (Tr. 838, 886), and that his pain medication "adequately

controlled his pain and allowed him to function and have quality of life" (Tr. 876). This substantial evidence contradicted Plaintiff's claims of disabling symptoms, and further demonstrates that the ALJ did not dismiss Plaintiff's "subjective complaints based entirely upon the belief that they were not corroborated by the record's medical evidence," as was the case in *Shelley C*. 61 F.4th at 360.

(ECF No. 10 at 17).

To be sure, ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of …some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020); *Shelley C. v. Comm'r of Soc. Sec. Admin*, 61 F.4th 341, 361-62 (4th Cir. 2023). *Arakas* and *Shelley C*. do not, however, "suggest than an ALJ should ignore objective evidence and fully credit subjective statements." *Hardin v. Dudek*, No. 7:24-cv-377-KS, 2025 WL 602951 at *5 (E.D.N.C. Feb. 25, 2025). Instead, ALJs must not "require[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford v. O'Malley*, No. 1:23-cv-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024). Moreover, "a claimant's allegations about [his] pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably expected to cause the pain the claimant alleges [he] suffers." *Craig v. Chater*, 75 F.3d 585, 595 (4th Cir. 1996). However, the Fourth Circuit has "previously held that ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record." *Arakas*, 983 F.3d at 97 (citing *Hines v. Barnhart*, 453 F.3d 559, 563, 565-66 (4th Cir. 2006)); *see also Lewis v. Berryhill*, 858 F.3d 858, 866, 868 n.3 (4th Cir. 2017). Claimants may not be faulted for pursuing conservative treatments for a disease like fibromyalgia because there is no other available treatment for this chronic condition. *See id.* at 102 ("[Plaintiff] cannot be faulted for 'failing to pursue non-conservative treatment options where none exist.'") (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

On December 15, 2025, the Fourth Circuit reversed and remanded *Hultz v. Bisignano*, reiterating that "fibromyalgia is a serious and mysterious condition, disproportionately affecting women, that our current science is incapable of observing through objective medical testing." *Hultz v. Bisignano*, No. 23-2259, slip op. at 2 (4th Cir. 2025).[3] In *Hultz*, the plaintiff suffered from "a host of medical conditions, including lupus, spinal disorders, knee osteoarthritis, ulnar neuropathy, factor V Leiden with a history of transient strokes, and, most significantly to this appeal, fibromyalgia." *Id.* Though the *Hultz* analysis focused in large part on the plaintiff's fibromyalgia, there exists considerable precedent in the Fourth Circuit showing that the court's fibromyalgia reasoning applies to "other diseas[es] that [do] not produce" objective medical evidence. *Arakas*, 983 F.3d at 97; *see also Shelley C.*, 61 F.4th at 360 (extending *Arakas* to depression symptoms); *Joseph J. v. Kijakazi*, Civil No. 21-2194-BAH, 2022 WL 2069283, at *3 (D. Md. June 8, 2022) (noting that in the degenerative disc disease context, "This Court has previously recognized that when evaluating a claimant's statements, an ALJ must consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could

---

[3] https://www.ca4.uscourts.gov/opinions/232259.P.pdf.

reasonably be expected to produce those symptoms.") (cleaned up).

Revisiting *Arakas* to determine whether the ALJ afforded proper deference to the plaintiff's subjective complaints of her pain, the *Hultz* court "reiterated that claimants are 'entitled to rely exclusively on subjective evidence to prove that [their] symptoms were so continuous and/or severe that they prevented [the claimant] from working a full eight-hour day.'" *Hultz*, No. 23-2259, slip op. at 16 (citing *Arakas*, 983 F.3d at 96, *Hines*, 453 F.3d at 563) (cleaned up). As such, the Fourth Circuit noted that the *Arakas* holding "was not a new holding, but one that we have repeatedly emphasized over the years and that the Commission eventually embraced in a policy interpretation." *Id.*

Recognizing that the ALJ's reliance on objective medical evidence to discredit the plaintiff's testimony about her fibromyalgia symptoms was a "clear contravention of *Arakas*," the Fourth Circuit elaborated upon the ALJ's references to the plaintiff's lifestyle. *Id.* at 17-18. There was not substantial evidence to support the ALJ's opinion in *Hultz*, partially because "[t]he ALJ's opinion offers no explanation for why the lapses in rheumatological treatment and the fact of being temporarily off medication indicate a resolution of symptoms, particularly in the face of contrary testimony from two witnesses and medical records indicating chronic pain for a near decade." *Id.* at 21. To that end, the Fourth Circuit explained, "we must consider the practical cost of seeking treatment—time, money, and physical exertion. Given that there is no treatment for fibromyalgia and painkilling medication may worsen the condition over time, a fibromyalgia patient may reasonably lapse in office visits or choose to forgo them altogether." *Id.* (citing Mayo Clinic, Fibromyalgia Diagnosis & Treatment (Sept. 4, 2020), https://www.mayoclinic.org/diseases-conditions/fibromyalgia/diagnosis-treatment/drc-20354785; https://perma.cc/LQG6-B6WH (last visited, December 16, 2025)). Regarding the plaintiff's daily activities, "the ALJ noted that Ms. Hultz reported the ability to occasionally shop, clean, cook, shop, take care of her children, and socialize with others throughout the years. Ms. Hultz even told her doctors that she went camping in August 2015, and that she was 'very active' with her children, 'doing a lot of walking and climbing,'... and that her pain medications 'allow[ed] her to function to continue to take care of her children.'" *Id.* at 21-22. However, the ALJ failed to "explain how these instances of normalcy undermine Ms. Hultz's claim of fibromyalgia pain, which is known to wax and wane." *Id.* at 22. Accordingly, the Fourth Circuit reiterated that "[b]eing able to live independently and participate in the everyday activities of life empowers people with disabilities and promotes their equal dignity." *Id.* (citing *Arakas*, F.3d at 101). Thus, the court held "The ALJ discounted [the plaintiff's and her grandmother's testimony] without adequate explanation. And this Court cannot identify evidence in the record that contradicts Ms. Hultz's testimony about her conditions. Her off-and-on treatment and taking of medications, her occasional ability to engage in daily activity, and even her marked improvement on her other medical issues all remain consistent with debilitating fibromyalgia symptoms." *Id.*

Here, *Hultz* provides instructive guidance for the proper application of *Arakas* in the degenerative disc disease context. Indeed, degenerative disc disease, like fibromyalgia, involves symptoms of pain for which objective diagnosis tools "are useful to aid in the diagnosis but are not in and of themselves definitive studies for the diagnosis of pain." Michael W. Hasz, *Diagnostic Testing for Degenerative Disc Disease*, Nat'l Libr. of Med. (Jul. 12, 2012), https://pmc.ncbi.nlm.nih.gov/articles/PMC3401540/; https://perma.cc/QW9L-ZJLC; *see also*

*Joseph J.,* 2022 WL 2069283, at \*3 (concluding that *Arakas* applies to degenerative disc disease complaints). Contrary to the Commissioner's repeated assertions that the ALJ's analysis did not discredit Plaintiff's complaints of pain solely based on objective medical evidence, the Court is persuaded that the ALJ failed to adequately address the intensity and persistence of Plaintiff's symptoms and erroneously relied on objective medical evidence to discredit Plaintiff's subjective complaints of his degenerative disc disease pain.  (Tr. 22-23). Moreover, when the ALJ concluded the Plaintiff's RFC is as follows:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

(*Id.* at 23), he reasoned in part,

> The claimant testified that he cannot work due to chronic hip pain and musculoskeletal pain. He stated that he has difficulty standing or sitting for more than 20-30 minutes. The claimant reported that his pain level is a 6-7 on a scale of 1-10 on an average day, and he experiences increased pain 1-2 times a week. He testified that he has been unable to lift heavy weight since 2018. (Hearing Testimony).

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 24-25. Here, the ALJ does not explain how any of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms is not entirely consistent with the medical evidence. As *Hultz, Arakas*, and *Joseph J.* make clear, mere evidence of the ups and downs claimants may experience in the consistency of their pain is not a proper basis to discredit a plaintiff's subjective complaints of pain.  *Hultz*, No. 23-2259, slip op. at 21-22; *Arakas*, 983 F.3d at 97; *Joseph J.,* 2022 WL 2069283, at \*3.  Moreover, cherry picking certain statements in support of a nondisability finding while ignoring evidence that points to a disability finding runs afoul of *Arakas*. *Arakas*, 983 F.3d at 97.  Here, Plaintiff repeatedly reported recurring pain, despite also reporting instances of improvements. Relying only on reports of improvements is a contravention of *Arakas*.  *See Hultz*, No. 23-2259, slip op. at 21-22. In the Court's view, this reasoning does discredit Plaintiff's allegations of his pain based on objective medical evidence as at least one of multiple factors. *Hultz*, No. 23-2259, slip op. at 21-22; *Arakas*, 983 F.3d at 97. Therefore, the Court finds Plaintiff's first argument persuasive and concludes that the ALJ's decision, adopted by the Appeals Council, improperly considered Plaintiff's subjective complaints in determining Plaintiff's RFC. Thus, I remand the case for further proceedings.

**V.    Conclusion**

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council improperly considered Plaintiff's subjective pain complaints.  In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to improperly discrediting Plaintiff's subjective reports of pain in contravention of *Arakas*, and the decision of the SSA is REMANDED for further proceedings in accordance with this Letter Order and Opinion.  In so holding, the Court expresses no opinion as to the validity of the ALJ's and Appeals Council's ultimate disability determination.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge